UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARJIT MAHIL,<br><br>      Plaintiff,<br><br>v.<br><br>OPTION CARE ENTERPRISES, INC.,<br><br>      Defendants. | Case No.: 20cv1559-BEN-MDD<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL PRODUCTION OF PLAINTIFF'S UNREDACTED MEDICAL RECORDS**<br><br>[ECF No. 21] |

Before the Court is a discovery dispute motion brought by Option Care Enterprises, Inc. ("Defendant") seeking production of Harjit Mahil's ("Plaintiff") unredacted medical records. (ECF No. 21). Plaintiff argues production is not warranted because the redacted information is irrelevant and privileged. (*Id.*). For the reasons stated herein, the Court finds that Plaintiff has not met her burden of "clarifying, explaining, and supporting" her objections based on relevance and privilege. *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal 2002) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). Instead, Plaintiff provides conclusory assertions regarding her purported bases for her objections. She submits no specific

information identifying any sensitive material contained in the medical records. Instead, her counsel asserts, in a conclusory fashion, that the redacted information is "irrelevant" and "private." The conclusory assertions do not meet Plaintiff's burden to justify continued redaction in light of the protections contained in the protective order. (*See* ECF No. 10). Accordingly, the Court **GRANTS** Defendant's request.

## I. FACTUAL BACKGROUND[1]

Plaintiff, who has generalized anxiety disorder, began working as a pharmacist for Defendant on March 27, 2017. (ECF No. 1, hereinafter "Compl." ¶¶ 19, 35). Defendant's employees, including Plaintiff, were "forced to forgo their meal and rest breaks (or to remain on duty while attempting to take a break), work significant amounts of overtime, and remain on call after hours and on weekends to keep up with the demand." (Compl. ¶ 16). Plaintiff notified her supervisor in April 2018 of several missed meal breaks. (Compl. ¶ 26). Defendant did not provide premium pay for the breaks and did not ensure subsequent meal breaks were taken. (*Id.*). As such, Plaintiff began asking for premium pay each time she missed a meal break. (*Id.*).

Beginning in October 2019 and after voicing her concerns about being overworked and unable to take rest and meal breaks at a staff meeting, Defendant began reprimanding Plaintiff for failing to take her breaks. (Compl. ¶¶ 30-32). Plaintiff "began clocking out for meal breaks" even though she was not able to take them because she was afraid she would be reprimanded or lose her job. (Compl. ¶ 32).

On October 18, 2019, while covering for another employee Plaintiff

---

[1] These facts, taken from the Complaint, should not be construed as findings of fact by the Court.

"accidentally missed two deliveries." (Compl. ¶ 33). Plaintiff's supervisor reprimanded her for missing the deliveries. (*Id*.). On October 23, 2019, Plaintiff's supervisor gave her a verbal disciplinary warning for "disorderly conduct" stemming from this incident. (Compl. ¶ 34). Plaintiff subsequently suffered a panic attack and left work early to see her doctor. (Compl. ¶ 35). Plaintiff's doctor prescribed her new medication to control her anxiety and wrote a note excusing her from work that day and the next for a medical condition. (*Id*.). Plaintiff provided the note to Defendant and took the recommended days off. (*Id*.).

On October 29, 2019, Plaintiff had a follow-up appointment with her doctor regarding her anxiety. Plaintiff's anxiety "was still not under control," and "[s]he felt extremely stressed, was suffering from abdominal pain, and everything felt hard to do . . . ." (Compl. ¶ 36). Her doctor recommended she take a month of medical leave, but Plaintiff declined. (*Id*.). On October 30, 2019, Plaintiff's supervisor gave her another disciplinary warning for "minor offenses" that purportedly occurred on September 14, 2019 when another employee mispackaged patients' deliveries. (Compl. ¶ 37).

"By December 24, 2019, [Plaintiff] was still suffering from severe anxiety, experiencing insomnia, and having difficulty concentrating and performing her job duties due to [Defendant's] wage and hour violations and retaliation." (Compl. ¶ 38). Plaintiff had also recently learned that another pharmacist planned to resign. (*Id*.). Fearing that Plaintiff would have to pick up the resigning pharmacist's workload, Plaintiff saw her doctor who again recommended taking medical leave. (*See id*.). Plaintiff took a note to Defendant certifying her need for a medical leave of absence from December 24, 2019 to February 4, 2020. (*Id*.). Defendant approved Plaintiff's leave on

December 26, 2019 under the Family Medical Leave Act ("FMLA") and California Family Rights Act ("CFRA"). (Compl. ¶ 39).

On January 10, 2020, Plaintiff was terminated "under the guise of an alleged reduction in force." (Compl. ¶ 40). Two weeks later, Defendant advertised online for a full-time pharmacist in the San Diego branch. (Compl. ¶ 42). Shortly thereafter, Defendant hired back a former staff pharmacist. (*Id.*). As a result of Defendant's conduct, Plaintiff alleges that she "has suffered lost wages and benefits and emotional distress." (Compl. ¶ 43).

Accordingly, on August 12, 2020, Plaintiff filed a complaint against Defendant raising eleven causes of action: (1) FMLA interference; (2) CFRA interference; (3) CFRA retaliation; (4) disability/perceived disability discrimination; (5) retaliation for requesting reasonable accommodation; (6) failure to prevent discrimination and retaliation; (7) failure to provide rest breaks or pay premiums; (8) failure to provide meal breaks or pay premiums; (9) retaliation; (10) wrongful termination in violation of public policy; and (11) unlawful and unfair competition. (Compl. ¶ 2).

## II. RELEVANT PROCEDURAL BACKGROUND

On February 11, 2021, Plaintiff testified at her deposition that she "temporarily suffered from severe emotional distress" from January 10, 2020 to November 2020. (ECF No. 17 at 11). Plaintiff contends that she still suffers from "continuing 'garden variety' emotional distress." (*Id.* at 8).

On February 26, 2021, Plaintiff disclosed seven of her treating physicians as non-retained experts—Dr. Kaylan Graham, Dr. Preeti Mathur, April L'Heureux, LMFT, Joyce Prince, LMFT, Dr. Brandon Niemeier, Dr. Cara Niemeier, and Tatiana Baroni—that will "testify about Plaintiff's mental disability, emotional distress, and the treatment she received for her

mental disability and emotional distress as a result of the claims alleged in this action." (ECF No. 17-3).

On March 9, 2021, Defendant served subpoenas for the production of documents on Scripps Clinic Carmel Valley and Community Psychiatry seeking Plaintiff's medical records. (ECF No. 21-1, hereinafter "Durazo Decl." ¶ 3). On March 29, 2021, the parties agreed to a first look agreement wherein the medical providers would first submit Plaintiff's medical records to Plaintiff's counsel. (Durazo Decl. ¶ 4). Plaintiff's counsel was permitted to review the records, redact information, and transmit the redacted records, along with a privilege log, to Defendant's counsel. (*Id.*). On April 3, 2021, Defendant served a subpoena for the production of documents on Sharp Mesa Vista Hospital seeking Plaintiff's medical records. (Durazo Decl. ¶ 3). These documents were subject to the same first look agreement. (Durazo Decl. ¶ 4).

Pursuant to the first look agreement, Plaintiff received 336 pages of Scripps Clinic records dated March 2, 2016 to April 12, 2021, 217 pages of Community Psychiatry records dated January 20, 2020 to December 8, 2020, and 440 pages of Sharp Mesa Vista Hospital records dated April 23, 2020 to July 8, 2020. (Rangel Decl. ¶ 13).

In the end of April and beginning of May, Plaintiff transmitted a privilege log and redacted medical records to Defendant. (Durazo Decl. ¶¶ 6-11). Plaintiff produced 180/336 pages of Scripps Clinic records, including all medical records relating to Plaintiff's anxiety disorder, all 217 pages of Community Psychiatry records, and all 440 pages of Sharp Mesa Vista Hospital records. (Rangel Decl. ¶ 14). Plaintiff explained in her privilege logs that the withheld records and redactions are irrelevant and private information, such as "unrelated medical ailments and medications, routine medical tests, . . . family medical history, third-party financial information,

5

and background information about [Plaintiff's] childhood." (*Id.* ¶ 15). Plaintiff's attorney declares that Plaintiff did not redact "any information relating to [Plaintiff's] emotional distress symptoms such as insomnia, nightmares, and depression, or her treatment and medications for her anxiety and emotional distress, and has also not redacted information relating to her potential alternate stressors." (*Id.* ¶ 19).

On May 10, 2021, counsel for Plaintiff and Defendant agreed to create a detailed chart outlining a sample of Plaintiff's redacted records and detailing the parties' positions relating to the medical record redactions at issue. (Durazo Decl. ¶ 12).

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 26(b) permits relevant and proportional discovery. Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

"Under Federal Rule of Evidence 501, federal common law generally governs claims of privilege." *Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014). "But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. "Where . . . the same evidence relates to both federal and state law claims" Ninth Circuit courts are not bound by state law on privilege. *Wilcox*, 753 F.3d at 876. "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *DIRECTV, Inc.*, 209 F.R.D. at 458.

### IV. ANALYSIS

Plaintiff contends that the redacted portions of her medical records are not relevant to any of her claims and that they are protected by her right to privacy and the psychotherapist-patient and physician-patient privileges.

(ECF No. 21). Defendant contends the information is relevant to Plaintiff's FMLA and emotional distress claims. (*Id.* at 18). Defendant also asserts that Plaintiff waived the psychotherapist-patient privilege, the physician-patient privilege is inapplicable because federal law applies, and the interest in the information outweighs any privacy interests. (*Id.* at 18-24).

**A.      Relevance**

As the party resisting discovery, Plaintiff bears the burden of showing that the discovery should not be allowed, "and has the burden of clarifying, explaining, and supporting its objections." *DIRECTV, Inc.*, 209 F.R.D. at 458. Plaintiff seeks emotional distress damages and, under a separate cause of action, must show that she was entitled to leave under the FMLA because of her generalized anxiety disorder. (S*ee generally*, Compl.). Plaintiff's medical records are relevant to those claims.

Plaintiff has not adequately explained the contents of the redactions. (*See* Durazo Decl., Exhibits E, G, and I; *see also* ECF No. 29, hereinafter "Exhibit J"). Plaintiff only provides conclusory assertions regarding her purported bases for her objections. (*See* Exhibit J). For example, Plaintiff explains that the redactions include "unrelated and irrelevant" medical records, such as vaccinations, lab results, medical screenings, medications, medical history, "routine healthcare maintenance," and physical injuries. (*See generally*, *id.*). With respect to her psychotherapist records, Plaintiff contends the redacted information includes "unrelated, irrelevant, and private" information, such as family history, information about Plaintiff's background and childhood, physical injuries, a "legal history comment from 2007," and "third-party financial information related to Plaintiff's mother's estate." (*See generally*, *id.*). Plaintiff's legal conclusions that the information is irrelevant, and her vague categorizations

of nonspecific medical information does not meet her burden to justify the continued redaction of this information.

Defendant is entitled to review Plaintiff's medical records to determine whether she was entitled to rights under the FMLA and to evaluate her emotional distress damages claims. The Court, therefore, finds that Defendant has established the relevancy of the requested information. Plaintiff's relevancy objection is **OVERRULED**.[2]

**B.     Choice of Law**

Next, the Court must determine whether state or federal privilege law applies to Plaintiff's redacted medical records. If the redacted medical records relate to Plaintiff's state law claims only, then state privilege law applies. *Wilcox*, 753 F.3d at 876-77. If, however, the records relate to Plaintiff's federal and state law claims, then federal privilege law applies. *Id.*

Plaintiff argues that the medical records relate only to her state law claims. (ECF No. 21 at 28). Defendant counters that the medical records also relate to Plaintiff's federal law claim for FMLA interference. (*Id.* at 18). Specifically, Defendant contends the records relate to whether Plaintiff's generalized anxiety disorder qualifies as a serious health condition under the FMLA. (*Id.* at 18). Because the parties agree that the records relate at least to the state law claims, the Court only analyzes whether they relate to Plaintiff's FMLA interference claim.

Under the FMLA, a "serious health condition" is "an illness, injury, impairment, or physical or mental condition that involves . . . continuing

---

[2] Plaintiff would prefer the Court conduct an *in camera* review of the records prior to compelling production of the unredacted medical records at issue. However, an inadequate demonstration of the contents of the redactions does not require the Court to fill in the blanks with an *in camera* review.

treatment by a health care provider." 29 U.S.C. § 2611(11). The medical records at issue are dated from December 27, 2017 to December 29, 2020. (*See* Exhibit J). The first and last medical records reference Plaintiff's generalized anxiety disorder. (*See id.*). Although the records pre-date Plaintiff's termination in January 2020, they do relate to Plaintiff's FMLA interference claim because they provide discoverable information regarding whether Plaintiff's generalized anxiety disorder is a mental condition that involves "continuing treatment by a health care provider." 29 U.S.C. § 2611(11). As a result, the Court finds that the medical records relate to state and federal law claims and that federal law on privilege applies.

**C.     Plaintiff's Objections**

Plaintiff objects to production of her unredacted medical records on the grounds that they are protected by the psychotherapist-patient privilege and the right to privacy.[3] (ECF No. 21). The Court addresses each objection in turn.

*1. Psychotherapist-Patient Privilege*

"[C]onfidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). This privilege may be waived by the patient. *Id.* at 15 n.14. Courts in the Ninth Circuit follow one of three

---

[3] In arguing that state privilege law applies, Plaintiff argued that the physician-patient privilege protected her from disclosing the unredacted medical records. (ECF No. 21 at 28). The Court declines to address this argument because federal privilege law applies and no physician-patient privilege exists under federal common law. *See In re Grand Jury Proceedings*, 867 F.2d 562, 564 (9th Cir. 1989) (noting the Ninth Circuit's refusal to adopt a phsycian-patient privilege), abrogated on other grounds by *Jaffee v. Redmond*, 518 U.S. 1 (1996).

different approaches to determine whether a plaintiff has waived the psychotherapist-patient privilege. Under the broad approach, a plaintiff waives the privilege merely by alleging emotional distress in the complaint. *Fitzgerald v. Cassil*, 216 F.R.D. 632, 636 (N.D. Cal. 2003). A plaintiff waives the privilege under the middle approach by alleging either a separate tort of distress or unusually severe emotional distress (*i.e.*, more than garden variety emotional distress). *Id.* at 637. Under the narrow approach, a plaintiff waives the privilege by affirmatively relying on the psychotherapist-patient communication. *Id.* at 636.

Plaintiff has waived her psychotherapist-patient privilege under each of the three approaches. First, Plaintiff has alleged emotional distress in the Complaint. (Compl. ¶ 43) ("Because of Option Care's conduct, Ms. Mahil has suffered . . . emotional distress."). Second, Plaintiff seeks more than garden variety emotional distress. (ECF No. 18) ("Plaintiff testified at her deposition that she 'temporarily suffered from severe emotional distress' from January 10, 2020 to November 2020."). Third, Plaintiff will rely on the psychotherapist patient communication. Plaintiff disclosed Dr. Mathur, April L'Heureux, LMFT, and Joyce Prince, LMFT as non-retained experts who will "testify about Plaintiff's mental disability, emotional distress, and the treatment she received for her mental disability and emotional distress . . . ." (ECF No. 17-3, Exhibit C). Accordingly, the Court **OVERRULES** Plaintiff's objection based on the psychotherapist-patient privilege.

*2. Right to Privacy*

Plaintiff contends that the redacted information is protected by her right to privacy. As an initial matter, a party's right to privacy was taken into consideration by the Supreme Court in *Jaffee* when articulating the psychotherapist-patient privilege. The Supreme Court "expressly rejected

the approach in which a court 'balanced' the evidentiary need for the communications against the patient's privacy concerns." *Fritsch v. City of Chula Vista*, 196 F.R.D. 562, 565 (S.D. Cal. 1999)(citing *Jaffee*, 518 U.S. at 7, 17-18). Accordingly, the Court only determines whether the right to privacy prevents disclosure of the remaining non-psychotherapist medical records.

Plaintiffs have a right to privacy in the confidentiality of their medical records. *Soto v. City of Concord*, 162 F.R.D. 603, 618 (N.D. Cal. 1995). The right to privacy is neither a recognized privilege nor an absolute bar to discovery. Rather, the right to privacy is subject to the balancing of needs. *See Seaton v. Mayberg*, 610 F.3d 530, 539 (9th Cir. 2010). Courts must balance the following factors to determine whether the interest in obtaining the information requested outweighs the individual's privacy interests: "(1) the type of information requested, (2) the potential for harm in any subsequent non-consensual disclosure, (3) the adequacy of safeguards to prevent unauthorized disclosure, (4) the degree of need for access, and (5) whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access." *Id*.

The unredacted medical records are relevant and important to establishing whether Plaintiff's generalized anxiety disorder is a serious health condition. Also, "[Defendant[] must be free to test the truth of [Plaintiff's] contention that she is emotionally upset <u>because of</u> [Defendant's] conduct. Once [Plaintiff] has elected to seek such damages, she cannot fairly prevent discovery into evidence relating to the element of her claim." *Fritsch*, 196 F.R.D. at 568-69 (emphasis in original). Further, there is a protective order governing confidential materials in this case. (S*ee* ECF No. 10). This protective order addresses confidentiality and privacy concerns. *See Dowell v. Griffin*, 275 F.R.D. 613, 617, 620 (S.D. Cal. 2011) (finding privacy concerns

can ordinarily be addressed with a protective order). Considering the competing interests, and based on the information before the Court, the protective order in this case was designed for and adequately protects the privacy and confidentiality rights of Plaintiff and any third parties mentioned in the medical records. As such, the Court **OVERRULES** Plaintiff's objections based on the right to privacy.

## V. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's request, **OVERRULES** Plaintiff's objections, and **ORDERS** Plaintiff to produce unredacted versions of the pages specified in Exhibit J to Defendant on or before **July 6, 2021**.

**IT IS SO ORDERED**.

Dated: June 21, 2021

_____
Hon. Mitchell D. Dembin
United States Magistrate Judge